[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a motion for modification of custody and visitation, dated September 28, 1994, coded No. 111, filed by the plaintiff; and a motion for modification of custody, dated, October 6, 1994, coded No. 117, filed by the defendant.
Many of the facts that give rise to these motions are not in dispute. The marriage between the parties was dissolved on August 12, 1993 as an uncontested dissolution. The court approved of a stipulation entered into between the parties, dated August 6, 1993. That stipulation provided, in part, as follows:
1. The parties shall have joint custody of the minor child, with the wife having physical custody subject to the husband's reasonable, liberal and flexible rights of visitation, which shall include the following:
 a. Alternate weekends from Friday after school or day care to Monday morning, when the child shall be dropped off at school or day care.
 b. Each Tuesday from 6 p.m. until Thursday morning, when the child shall be dropped off at school or day care.
 c. Each Father's Day shall be with the husband and each Mother's Day shall be with the wife.
 d. The parties shall alternate all major holidays including New Year's Day, Easter, President's Day, the Thanksgiving weekend (Thursday through to Sunday evening), Labor Day, Memorial Day, Fourth of July, Christmas Eve Day from 10 a.m. to 7 p.m. and Christmas Day from 9 a.m. to 7 p.m.
e. Each party shall also have two weeks vacation time, CT Page 2154 and each party is to provide the other with notification thirty (30) days in advance of said vacation.
Since the entry of that judgment, the parties have filed the following motions: (1) motion for modification of custody and visitation, coded No. 111, filed by the plaintiff; (2) motion for contempt regarding visitation, coded No. 112, filed by the plaintiff; (3) motion to transfer, coded No. 113, filed by the plaintiff; (4) motion for counsel fees, coded No. 114.01, filed by the plaintiff; (5) motion for a referral to Family Services regarding custody dispute, coded No. 114.02, filed by the plaintiff; (6) motion for counseling, coded No. 115, filed by the plaintiff; (7) motion for psychological evaluation, coded No. 116, filed by the plaintiff; (8) motion for modification of custody, coded No. 117, filed by the defendant; (9) motion for modification of visitation pendente lite and motion for contempt, coded No. 118, filed by the defendant; (10) motion for a restraining order, coded No. 119, filed by the defendant; (11) motion for psychological evaluation and counseling, coded No. 120, filed by the defendant; (12) objection to motion to transfer, coded No. 121, filed by the defendant; (13) motion for order, coded No. 122, filed by the defendant; (14) motion for contempt, coded No. 124, filed by the defendant; (15) motion to refer to Family Services for custody study, coded No. 125, filed by the defendant; (16) motion for rehearing, coded No. 127, filed by the defendant; (17) motion of consult to withdraw appearance, coded No. 128, filed by counsel for the defendant; (18) motion for restraining order, coded No. 129, filed by the defendant; (19) motion for contempt, coded No. 130, filed by the defendant; (20) motion for order, coded No. 131, filed by the defendant; (21) motion for order, coded No. 134, filed by the defendant; (22) affidavit regarding attorneys fees, filed by counsel for the minor child, coded No. 139; (23) motion for order filed by counsel for the minor child, coded No. 141; (24) defendant's claim for relief, coded No. 143; (25) plaintiff's request for relief, coded No. 144; (26) motion for child support filed by the defendant, coded No. 145; (27) motion for order filed by counsel for the minor child, coded No. 148; (28) motion for order filed by counsel for the minor child, coded No. 149; (29) motion for contempt filed by the defendant, coded No. 150; (30) notice of intent to argue filed by the defendant, coded No. 151; (31) motion for contempt, coded No. 152, filed by the defendant; (32) follow-up report from the attorney for the minor child, coded No. 154; (33) affidavit regarding attorney's fees, coded No. 155, filed by counsel for the minor child; (34) motion for CT Page 2155 articulation and for further order, coded No. 157, filed by the defendant.
The plaintiff's motion for modification of custody and visitation, coded No. 111, dated September 28, 1994, sought sole custody of the minor child and a modification of the visitation schedule that was entered, as part of the stipulation, at the time of dissolution of marriage. The plaintiff's request for relief, dated September 14, 1995 and filed September 25, 1995, coded No. 144, seeks to continue the joint custody order between the parties but to modify the existing visitation order. The defendant's motion for modification of custody, coded No. 117, sought sole custody of the child, but did not seek to modify the existing visitation orders. The defendant's claims for relief, dated September 14, 1995 and filed September 14, 1995, coded No. 143, seeks an order of sole custody, and further seeks to maintain the existing visitation schedule substantially in accordance with the stipulation filed at the time of dissolution. The two primary issues before the court are: (1) should the existing joint custody order be modified; and (2) should the existing visitation order be modified. These issues will be discussed seriatim.
THE ISSUE OF JOINT CUSTODY.
Section 46b-56a provides, in part, that "joint custody" means an order awarding legal custody of the minor child to both parents, providing for joint decision-making by the parents, and providing that physical custody shall be shared by the parents in such a way as to assure the child of continuing contact with both parents. Section 46b-56 provides, in part, that in making or modifying any order with respect to custody or visitation, the court shall be guided by the best interest of the child and consider whether the parties have satisfactorily completed participation in a parent education program established pursuant to § 46b-69b. Both parents have satisfactorily completed the parent education program as ordered by this court.
The court finds the following additional facts regarding the issue of joint custody.
The defendant raises the following issues in support of his claim that the order of joint custody should be vacated:
1. Enrollment of the minor child in Immanuel Lutheran School CT Page 2156 and terminating the defendant's midweek visitation.
2. Changes of address by the plaintiff without notification to the defendant.
3. Changes in phone number by the plaintiff to an unlisted number without notification to the defendant.
4. Failing to inform the defendant that the child had chicken pox.
5. Failing to inform the defendant that the child had pneumonia.
6. Failing to inform the defendant of a change in the child's pediatrician.
7. A September 13, 1994 ex parte restraining order obtained by the plaintiff against the defendant, and allegations by the plaintiff of physical and/or sexual abuse to the child by the defendant.
8. Failure of the plaintiff to cooperate with Dr. Hyams.
9. Taking the child to see Dr. Tolor without the defendant's knowledge after an October, 1994, court order entered into by agreement that only Dr. Hyams and Dr. Pogge would be involved in evaluating the child.
10. Enrolling the child in karate class without the defendant's knowledge.
Many of the above claims were disputed by the plaintiff and involved issues of credibility. The court makes the following additional findings of fact regarding each of the above claims, which will be discussed seriatim.
ENROLLMENT OF THE MINOR CHILD IN IMMANUEL LUTHERAN SCHOOL AND TERMINATING THE DEFENDANT'S MIDWEEK VISITATION.
On February 18, 1994, the plaintiff applied to the Immanuel Lutheran School for the minor child to be admitted to enter kindergarten. In that application, she listed the defendant as the father but failed to list his occupation, home address, telephone number, business name, business address and business phone, although she had that information available. The application filled out by the plaintiff also listed as persons CT Page 2157 authorized to take the child from school were the plaintiff, Patty Storm, Brian McCulloch and Charlene Bates. She also listed the defendant as the individual with whom the child should not leave school. She did not inform the defendant that she had applied to the Immanuel Lutheran School for the child to be admitted to kindergarten. The persons who were listed as authorized to take the child from school included the plaintiff's sister, her mother and her boyfriend. The child was admitted to Immanuel Lutheran School on or about August 27, 1994. On August 27, 1994, the plaintiff signed an "emergency and illness information" form for the Immanuel Lutheran School. That form listed as the local person to contact if the plaintiff was not available, Brian or MaryAnn McCulloch. The defendant did not learn that the child had been admitted to the Immanuel Lutheran School until August 30, 1994. On September 6, 1994, the defendant called the Immanuel Lutheran School asking for directions to the school in order to pick up the child. The child had commenced school at Immanuel Lutheran on August 31, 1994. After the defendant called the school for directions, the school informed the plaintiff of that phone call. The plaintiff then came to the school and removed the child from the school before the defendant arrived. The plaintiff claims that she removed the child from the school at the direction or request of the school. The court finds that that claim is not credible and that no such direction or request was made by the school. The visitation order entered at the time of dissolution in accordance with the stipulation of the parties, dated August 6, 1993, would have allowed the defendant to pick up the child at the school. The plaintiff claims that that stipulation was prepared in error and was not supposed to have allowed midweek visitation once the child entered school. The court finds that that claim is not credible and that the stipulation, as prepared and as approved by the court, did reflect the intent of the parties. The plaintiff also claims that after she became aware of the stipulation providing for midweek visitation after the child entered school, that she discussed this with the defendant, and that they agreed to eliminate the midweek visitation. The court finds that that claim is not credible and that there was no agreement to eliminate the midweek visitation. The child had been enrolled in day care during the summer of 1993. The day care ended on August 23, 1994. The defendant was able to exercise his midweek visitation by picking up the child at day care and dropping the child off at day care, even though he did not have the plaintiff's address. After day care ended on August 23, 1994, his next scheduled midweek visitation would have commenced on Tuesday, August 30, 1994. He CT Page 2158 did not have any visitation on that day as he did not know where the child was. The plaintiff had told him that the child would be commencing school either at the Rockwell School in Bethel or at St. Mary's School. He went to the Rockwell School and called St. Mary's School but was unable to locate the child. He then went to the Bethel Police in order to enforce his visitation. The police obtained the plaintiff's address and went with him to her home in Bethel. Initially, the plaintiff would not tell the defendant where the child was enrolled in school, but then did tell him that she was enrolled in Immanuel Lutheran. August 30, 1994 was the first day that the defendant learned that the child was enrolled at Immanuel Lutheran School. The defendant arrived at the school on September 6, 1994. The school requested that he bring documents to show that he had a right to see the child, and he returned with the stipulation regarding visitation dated, August 6, 1993. In accordance with the ex parte restraining order that the plaintiff obtained on September 13, 1994, the defendant did not come to the Immanuel Lutheran School between September 13, 1994 and September 21, 1994. When he arrived at the Immanuel Lutheran School, following a court hearing on the restraining order on September 21, 1994, the child hugged him. The child was very happy and excited to see the defendant and was very loving to him. She did not show any fear or apprehension in seeing the defendant. While at the school, the child appeared to be normal and well adjusted. On March 16, 1995, the child was at school. In the afternoon, she asked the school to write a note to her mother telling her mother that she, the child, was sick. The school officials told the child that the note could only be written if the child had been really ill and that she had been fine all day long, and the child was asked why the note was necessary. The child's explanation was that mom needs it to show daddy. On February 16, 1995, the school informed Family Services that the child was a happy, smiley child who gives no indication of family problems. She adjusted well to kindergarten, enjoys all aspects of it and is well behaved. She plays and works well with the other children. She is always clean and dressed appropriately. On Wednesdays the defendant brings the child to school and comes into the kindergarten room with her. She eagerly shows and tells him about what we have done. She is not anxious for him to leave, nor is he in a hurry. It's a very loving and caring relationship.
THE DEFENDANT'S CLAIM THAT THE PLAINTIFF CHANGED HER ADDRESSES WITHOUT NOTIFYING HIM.
The court finds the following additional facts regarding this CT Page 2159 claim. The defendant first learned of the plaintiff's new address in Bethel at the end of August, 1994. The plaintiff and defendant had won a lottery a few years earlier and the check was in both names. In August of 1994, the plaintiff gave the defendant her new address in order to have one-half of the lottery check sent to her. She had moved to her new address in June of 1994. The defendant did not know of the plaintiff's Bethel address between June and August, 1994.
THE DEFENDANT'S CLAIM THAT THE PLAINTIFF CHANGED HER PHONE NUMBER TO UNLISTED NUMBERS WITHOUT NOTIFYING HIM.
The court finds the following additional facts regarding this claim. Between August of 1993 and August of 1994, the plaintiff on two occasions obtained unlisted phone numbers without giving those numbers to the defendant. On one occasion he did not learn of the new phone number for two months. She had an unlisted phone number in August of 1994, and the defendant did not learn the unlisted phone number until a court order was entered on September 23, 1994, ordering the plaintiff to give him that phone number.
THE DEFENDANT'S CLAIM THAT THE PLAINTIFF DID NOT TELL HIM WHEN THE CHILD HAD CHICKEN POX.
The court finds the following additional facts regarding this claim. On one occasion, after April of 1994, the defendant went to day care to exercise his regular scheduled weekday visitation and the child was not there. He called the plaintiff and was informed for the first time that he would not have visitation due to the fact that the child had chicken pox. On his next scheduled visitation day, the defendant called the plaintiff but there was no answer. The following day, the child told the defendant on the telephone that she had spent the prior evening at the home of the plaintiff's sister's boyfriend.
THE DEFENDANT'S CLAIM REGARDING PNEUMONIA.
In April of 1994, the child was ill with pneumonia. The defendant had gone to day care to exercise his normal visitation and the child was not there. He called the plaintiff and was then informed for the first time that the child had pneumonia.
THE DEFENDANT'S CLAIM THAT THE PLAINTIFF CHANGED THE CHILD'S PEDIATRICIAN WITHOUT INFORMING HIM. CT Page 2160
The court finds the following additional facts regarding this claim. At the time of dissolution of marriage in August of 1993, the child's pediatrician was Dr. Alan. Subsequently, the pediatrician was Dr. Burton. The plaintiff later changed the pediatrician from Dr. Burton to Dr. Magner without informing the defendant of that change. The plaintiff did not consult with the defendant regarding changing the pediatrician from Dr. Burton to Dr. Magner.
THE SEPTEMBER 13, 1994 EX PARTE RESTRAINING ORDER OBTAINED BY THE PLAINTIFF, AND ALLEGATIONS BY THE PLAINTIFF OF PHYSICAL AND/OR SEXUAL ABUSE TO THE CHILD BY THE DEFENDANT.
The court finds the following additional facts. On September 13, 1994, the plaintiff filed an application for relief from abuse under the provision of § 46b-15. In that application, she requested an order that the defendant not impose any restraint on the minor child, that he not threaten, harass, assault, molest, sexually assault or attack the minor child, and that he not enter her residence at 34B Durant Avenue, Bethel, Connecticut. She also requested that she be granted temporary custody of the minor child and that the defendant's visitation, that was entered pursuant to a judgment entered in the Litchfield Superior Court, be suspended until further order of the court, and that he be refrained from entering the Immanuel Lutheran School. Her ex parte application was granted, and the matter was assigned for hearing for September 21, 1994. In her application, she attached a sworn statement, dated September 13, 1994. That application referred to the fact that the defendant had visitation with the child on Tuesday, from 6 p.m. until Thursday 6 a.m., as well as every other weekend. Her affidavit refers to bruises that she found on the child.
Her affidavit concludes with the statement: "I am fearful that my daughter's health and safety is in jeopardy when she is in the presence of her father." On September 21, 1994, the defendant appeared in court for the scheduled hearing on the restraining order. On that date, the parties entered into an agreement that the ex parte restraining order, entered on September 13, 1994, be vacated. The agreement further provided and the court ordered, as follows:
 The parties, having appeared before the Court and having requested that the ex parte restraining order entered 9-13-94 be CT Page 2161 vacated;
 the Court hereby ORDERS the restraining order vacated and further ORDERS in accord with the oral agreement of the parties;
 that the defendant shall pick the minor child up after school today and have visitation to end upon returning the child to school on Thursday; then the visitation schedule shall return to the regular schedule of the dissolution judgment;
 and that the plaintiff is to provide her telephone number to the defendant and she shall not change that number without notice to the defendant;
 and that the defendant shall have daily telephone contact with the child between 6:00 and 6:30 p.m. and during that time the child shall answer the telephone;
 and that when the child is with the defendant for visitation, the plaintiff shall have telephone contact with the child between 6:00 and 6:30 p.m.;
 and that Brian McCulloch shall not be present during pick up and drop off of the minor child for visitation with the defendant; and that Brian McCulloch shall not be alone with the child; and that defendant shall not bring a police escort when picking the minor child up for visitation;
 and that the paternal grandmother shall be able to pick the minor child up from school.
Prior to the September 23, 1994 hearing on the restraining order, the plaintiff had never told the defendant that she believed that the defendant was abusing the child. On September 10, 1994, the plaintiff brought the child to the Center for Pediatric Medicine claiming she felt the child is possibly being physically, mentally and possibly sexually abused by the defendant. The child again denied any physical or sexual abuse by the father. In the plaintiff's supporting affidavit to the application for a restraining order, dated September 13, 1994, she referred to the fact that she had brought the child to her pediatrician on September 10, 1994 to have the bruising examined and to discuss the child's recent behavior around bedtime. She did not mention in that affidavit that it was impossible to say whether or not the bruises were from abuse, and further, that any CT Page 2162 vulva erythema was most likely a hygiene issue. On April 20, 1995, the plaintiff again brought the child to the Center for Pediatric Medicine, claiming that suspected child abuse had occurred between April 18, 1995 and April 20, 1995. Plaintiff was seeking to document the bruises, and requested that the Center for Pediatric Medicine report the bruises. The plaintiff claimed the bruises occurred after a two-day visit with the defendant. The bruises, in fact, were not suspicious and were consistent with the child's explanation as to how they occurred. The plaintiff brought the child to see Dr. Alexander Tolor, a psychologist, commencing September 26, 1995, and weekly thereafter. She never made any claim to him of any alleged sexual abuse by the defendant to the child. When the defendant testified at the hearing regarding the motions to modify custody and visitation, coded No. 111 and No. 117, she claimed that she had never told anyone that the defendant physically and/or sexually abused the child. That testimony is not credible. She made that claim to the Center for Pediatric Medicine, as well as to Dr. Hyams and Dr. Pogge. She also told her boyfriend she believed the defendant was physically abusing the child. The child visited with the defendant between September 2, 1994 and September 5, 1994, when she was returned to the plaintiff. The plaintiff did not bring the child to the Center for Pediatric Medicine until September 10, 1994, when she claimed that the child had been returned home with bruises. When the plaintiff visited with Dr. Pogge, she informed Dr. Pogge that Dr. Tolor had found evidence of abuse. No such evidence of abuse had been found by Dr. Tolor. Plaintiff now claims that she did not tell Dr. Pogge that Dr. Tolor had found evidence of abuse. The court finds that that claim by the plaintiff, that she had not told Dr. Pogge that Dr. Tolor had found evidence of abuse is not credible. Plaintiff also told Dr. Hyams that Dr. Tolor had found abuse even though Dr. Tolor had not found such abuse. Her claim that she had not told Dr. Hyams that Dr. Tolor had found physical abuse of the child by the defendant is not credible. The court finds that the defendant has never physically abused the minor child and has never sexually abused the minor child, and that there was no credible reason for the plaintiff to believe that such abuse had ever taken place.
THE DEFENDANT'S CLAIM THAT THE PLAINTIFF TOOK THE CHILD TO BE EVALUATED BY DR. TOLOR WITHOUT HIS KNOWLEDGE.
The court finds the following additional facts regarding this claim. Commencing January of 1995, the plaintiff brought the CT Page 2163 minor child to Dr. Tolor for several assessment sessions. She did not consult with the defendant prior to the time that the child was brought to see Dr. Tolor.
THE DEFENDANT'S CLAIM THAT THE PLAINTIFF FAILED TO COOPERATE WITH DR. HYAMS.
On October 24, 1994, the court approved of an agreement between the parties and entered orders in accordance with that agreement. The agreement provided in part that there was to be a psychological evaluation by agreement, and the child and the parties were to begin counseling with Dr. Denise Hyams. Further, if the plaintiff has a reasonable objection to Dr. Hyams after consulting with her, a new therapist/counselor will be selected. On January 5, 1995 a court order was entered, coded No. 124, upholding the order of October 24, 1994 with respect to Dr. Hyams. The plaintiff was ordered to make an appointment with Dr. Hyams, preferably within the next two weeks for a Wednesday appointment in Dr. Hyams' office in Katonah, New York. The parties were ordered to request appointments with Dr. Hyams for every two weeks instead of every week unless Dr. Hyams says it is necessary for the benefit of the child to meet every week. The court finds that the plaintiff failed to cooperate in the court ordered evaluation performed by Dr. Hyams in refusing to participate in discussing issues with Dr. Hyams in the presence of the defendant when requested to do so by Dr. Hyams.
THE DEFENDANT'S CLAIM THAT THE PLAINTIFF ENROLLED THE MINOR CHILD IN KARATE CLASS WITHOUT CONSULTING WITH HIM.
The court finds that on one occasion the plaintiff did enroll the child in karate class without first consulting with the defendant.
This court has considered the provisions of § 46b-56a and has further considered the provisions of § 46b-56 in determining the issues of joint custody, custody and visitation. The court finds that the plaintiff has failed to engage in joint decision-making with the defendant regarding the minor child, and is not willing to so engage at the present time. When the plaintiff's deposition was taken on September 5, 1995, she stated that joint custody did not work with the defendant. She now claims that joint custody has worked for the most part. The court finds that claim is not credible. This court finds that it is in the best interest of the minor child that the existing order of CT Page 2164 joint custody be modified. The court finds that the plaintiff has attempted to sabotage the defendant's relationship with the child, and that the plaintiff has not been supportive of the defendant's relationship with the child. This court therefore enters the following orders.
ORDER
1. The plaintiff's motion for modification of custody and visitation, coded No. 111, is denied.
2. The plaintiff's motion for modification of custody, coded No. 117, is granted and the following orders are entered:
 a. The joint custody order of August 12, 1993 is modified, and sole custody of the minor child is awarded to the defendant.
 b. The plaintiff is awarded visitation according to the following schedule:
 (1) Alternating weekends from after school to Monday morning when the child is returned to school by the plaintiff.
 (2) Every Monday from after school to Tuesday morning when the child is returned to school by the plaintiff.
 (3) Every Thursday from after school to Friday when the child is returned to school by the plaintiff.
 (4) Each Father's Day shall be with the defendant and each Mother's Day shall be with the plaintiff regardless of which weekend it is on the schedule. The schedule will not be altered to make up for any lost time to either parent.
 (5) The parties shall alternate all major holidays as according to the original judgment.
 (6) Each party shall have two weeks vacation time, and each party is to provide the other with notification, at least thirty (30) days in advance of said vacation. Said notification to be in writing by registered mail, return receipt or certified mail, return receipt.
CT Page 2165
 (7) Each party is ordered not to permanently remove the child from the state of Connecticut without prior court order.
 (8) The prior pendente lite order entered by this court regarding the payment of counsel fees for counsel for the minor child remains in full force and effect and is incorporated by reference into this judgment.
Axelrod, J.